UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | : |
| | : |
| DEWEY & LEBOEUF, LLP, | : |
| | : |
|                              Debtor. | : |
| | : |
| FTI CONSULTING, INC., solely in its capacity as Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust, established under the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP Dated January 7, 2013, | : Chapter 11 : : : Case No. 12-12321(MG) |
|                              Plaintiff, | : |
| v. | : Adv. Pro. No. 14-02054-mg |
| LCN CAPITAL LLC a/k/a LCN CAPITAL PARTNERS LLC, LCN NORTH AMERICAN GP, L.P., LCN MANAGEMENT COMPANY S.á.r.l., LCN NORTH AMERICAN FUND, L.P., LCN EUROPEAN FUND, FCP-SIF, and LCN CAPITAL PARTNERS, L.P., | : : : : : : |
|                              Defendants. | : |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR WITHDRAWAL OF THE REFERENCE TO THE BANKRUPTCY COURT**

                                                            MEISTER SEELIG & FEIN LLP
                                                            Stephen B. Meister
                                                            Christopher J. Major
                                                            Chelsea Silverstein
                                                            125 Park Avenue, 7th Floor
                                                            New York, NY 10017

                                                            *Attorneys For Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 5

    I.    The Constitution Prohibits The Bankruptcy Court From Adjudicating Plaintiff's State Law Claims ........................................................................................................... 5

    II.   The Seventh Amendment Entitles Defendants To A Trial By Jury Before This Court ..... 7

    III.  The Court Should Now Withdraw The Reference ............................................................ 8

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                          Page(s)

*Aniero Conrete Co., Inc. v. New York City Construction Authority,*
   2000 WL 863208 (S.D.N.Y. 2000) .............................................................................. 8

*Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,*
   494 U.S. 558, 110 S.Ct. 1339 (1990) .......................................................................... 7

*Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,*
   462 B.R. 457 (S.D.N.Y. 2011) ..................................................................................... 9

*Executive Benefits Ins. Agency v. Arkinson,*
   134 S.Ct. 2165 (2014) ............................................................................................ 4, 10

*Gecker v. Marathon Financial Ins. Co., Inc. (In re Automotive Professionals, Inc.),,*
   389 B.R. 621 (Bankr. N.D. Ill. 2008) .......................................................................... 8

*Granfinanciera, S.A. v. Nordberg,*
   492 U.S. 33 (1989) ................................................................................................... 6, 7

*In re CIS Corp.,*
   172 B.R. 748 (S.D.N.Y. 1994) ..................................................................................... 6

*In re Gen. Media, Inc.,*
   335 B.R. 66 (Bankr. S.D.N.Y. 2005) ........................................................................... 6

*In re Orion Pictures Corp.,*
   4 F.3d 1095 (2d Cir. 1993) ....................................................................................... 8, 9

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
   458 U.S. 50 (1982) ....................................................................................................... 6

*Parsons v. Bedford,*
   3 Pet. 433, 7 L.Ed. 732 (1830) ..................................................................................... 7

*Stern v. Marshall,*
   131 S. Ct. 2594 (2011) ......................................................................................... 5, 6, 7

**Statutes**

28 U.S.C. §157(d) .............................................................................................................. 5, 8

22 NYCRR 1215.1 ............................................................................................................. 4, 7

Defendants, LCN Capital LLC a/k/a LCN Capital Partners LLC, LCN North American GP, L.P., LCN Management Company S.á.r.L., LCN North American Fund, L.P., LCN European Fund, FCP-SIF, and LCN Capital Partners, L.P ("Defendants" or "LCN"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion for withdrawal of the reference to the United States Bankruptcy Court (the "Motion").

## PRELIMINARY STATEMENT

In this action, Plaintiff FTI Consulting, Inc., in its capacity as Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust ("Trustee" or "Plaintiff"), asserts state law claims seeking money damages against Defendants. Defendants timely demanded a trial by jury, and never filed a proof of claim in the Dewey & LeBoeuf LLP bankruptcy case. Thus, Defendants are entitled to a trial by jury in the United States District Court.

Discovery is complete in this action, and after convincing Plaintiff to withdraw several causes of action the Bankruptcy Court stated that it will not entertain motions for summary judgment. Thus, there are no pre-trial proceedings remaining in this case for the Bankruptcy Court, and therefore the District Court should now withdraw its reference to the Bankruptcy Court.

## BACKGROUND

On May 28, 2012, the international law firm Dewey & LeBoeuf LLP ("Dewey" or "Debtor") filed a voluntary petition for relief (the "Bankruptcy Petition") under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Pursuant to Debtor's Second Amended Chapter 11 Plan of Liquidation, Plaintiff was appointed as the Trustee for the Secured Lender Trust of Dewey. Plaintiff alleges that the assets of the Secured Lender Trust include,

[6341-001/4694614/1]                               1

among other things, Dewey's accounts receivable – namely, unpaid legal bills of Dewey's former clients.

On July 23, 2014, Plaintiff commenced this action against Defendants seeking damages of $768,981.10 for purported unpaid legal fees incurred by Defendants before Dewey filed its Bankruptcy Petition for legal services allegedly provided by Dewey to Defendants for various matters between July 12, 2010 and May 15, 2012. Plaintiff asserted a number of state law claims, including breach of contract, quantum meruit, and unjust enrichment.

Following a consented to extension of time, on September 23, 2014 Defendants filed their Answer and Affirmative Defenses in which Defendants demanded a trial by jury before the United States District Court.

In accordance with recent practice in this District, the Bankruptcy Court conducted the pre-trial proceedings. The discovery period closed on June 26, 2015, and all discovery was in fact completed by that date. Discovery confirmed that Dewey never entered into an engagement agreement with any of Defendants. Moreover, though Plaintiff alleges the services commenced in July 2010 – some twenty-two months before Dewey filed the Bankruptcy Petition – Dewey never once issued a prepetition invoice to any of Defendants for any of the purported services. In fact, the only "invoice" ever created was generated post-petition in the fall of 2012 by the Dewey estate's collections consultants, On-Site Associates, LLC ("On-Site") for the "lump sum" of $768,981.10 for services allegedly rendered during the period from July 12, 2010 through May 15, 2012. Defendants deposed the principal of On-Site, George Abodeely, who conceded that not only did On-Site not share the invoice with the Dewey relationship partner in charge of the matter, Joseph Smith, Esq. ("Smith"), but in fact On-Site disregarded Smith's directions regarding the financial arrangement between Dewey and Defendants. In fact, the "invoice"

generated by On-Site was a data dump, which consisted of inappropriately billed time falling into three categories: (1) real estate private equity fund formation work for Defendant LCN Capital Partners ("LCN"), (2) an unrelated litigation matter in which Edward LaPuma (a principal of LCN) ("LaPuma") was a defendant (the "LaPuma Litigation"); and (3) preparatory work for future real estate transactions if and when LCN launched a private equity fund as well as educational work performed by Dewey lawyers for their own benefit. None of the work is properly chargeable to Defendants.

Discovery confirmed that the fund formation work performed by Dewey would only be billable to LCN upon the occurrence of certain conditions, including (a) Dewey completing the fund formation work; (b) LCN launching a fund; (c) LCN having sufficient funds remaining within the $500,000 organizational cost cap it negotiated with its investors; and (d) Dewey would be compensated in the form of future work forming LCN's successor funds and the real estate transactional work LCN's funds would generate. Dewey never completed the fund formation work, and instead LCN had to retain Schulte Roth & Zabel LLP to perform the fund formation work. By the time LCN finally launched its fund in 2013, LCN had incurred well more than $1,000,000 in organizational costs, such that in no event does LCN owe any fees to Dewey. In addition, as Smith confirmed during his deposition, Dewey agreed to represent LaPuma and his wife in the LaPuma Litigation free of charge as an accommodation. Moreover, as Smith also confirmed, the preparatory and educational work by Dewey lawyers for their own benefit was inappropriate and never properly billable to Defendants.

On June 26, 2015, in accordance with the Scheduling Order entered by the Bankruptcy Court, and based on the discovery record, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion for summary judgment. Defendants' letter requesting a

pre-motion conference expressly reserved Defendants' right to a final judgment by the District Court and a trial by jury before the District Court. The Bankruptcy Court conducted the pre-motion conference on July 23, 2015, during which the Bankruptcy Court persuaded Plaintiff to withdraw several of its causes of action. For example, Plaintiff agreed to withdraw its breach of contract claims, because under New York law a lawyer cannot recover a legal fee where the lawyer fails to enter into a written engagement letter with the client, *see* 22 NYCRR 1215.1, and it is undisputed that Dewey never obtained a written engagement letter from Defendants. In addition, Plaintiff agreed to withdraw its claims against former defendant LaPuma, because it was undisputed that Dewey agreed to perform the services for LaPuma free of charge.

After convincing Plaintiff to withdraw several causes of action, the Bankruptcy Court stated that it would not entertain a motion for summary judgment by Defendants on the remaining causes of action. Had the Bankruptcy Court permitted the filing of a summary judgment motion, it at most could have issued proposed findings of fact and conclusions of law which the District Court would have had to review *de novo*. *See Executive Benefits Ins. Agency v. Arkinson*, 134 S.Ct. 2165, 2170 (2014) (when confronted with "Stern Claims – a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter" – the Bankruptcy Court "is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment").

After being advised by Defendants that Defendants would now be moving to withdraw the reference, the Bankruptcy Court directed the parties to complete the Bankruptcy Court's pre-trial conference order so that the case would be "completely trial ready" "when it goes to the district court." *See* 7/23/15 Tr. of Pre-Motion Conference, at pgs. 36-37 ("I fully understand that

the defendants intend to make a motion to withdraw the reference, and they've demanded a jury in their answer. Assuming that the motion's filed and that the reference is withdrawn, I want it to go to the district court trial-ready, so that whoever – I mean, if they want to vary what's in – there's nothing magical about what's in my joint pre-trial conference order, but when it goes to the district court, assuming it goes to the district court, I want it to be completely trial ready").

On July 30, 2015, Plaintiff filed its First Amended Complaint asserting three causes of action: (1) a declaration that fees and expenses invoiced and due and owing are property of the estate; (2) unjust enrichment; and (3) quantum meruit. Plaintiff now seeks damages in the amount of $668,701.10, reflecting the reduction from dropping claims relating to services for the LaPuma Litigation. Plaintiff seeks no equitable relief.

## ARGUMENT

The Court should withdraw the reference to the Bankruptcy Court, because the Bankruptcy Court lacks the constitutional authority to adjudicate Plaintiff's claims and because Defendants have demanded a jury trial before the District Court, as is Defendants' right under the Seventh Amendment. Since there is nothing constitutionally-permissible remaining for the Bankruptcy Court to do, now is the appropriate time for this Court to withdraw the reference.

### I. **The Constitution Prohibits The Bankruptcy Court From Adjudicating Plaintiff's State Law Claims**

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that although Congress granted to the Bankruptcy Court the power to adjudicate all claims designated in 28 U.S.C. §157(d) as "core proceedings," the Constitution prohibits Congress from conferring power on a non-Article III court (like the Bankruptcy Court) to decide "any matter, which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Id.* 131 S. Ct. at 2609. Certain matters that are designated as "core" by the statute, including the state law

counterclaim brought by the debtor in *Stern*, are by their nature common law suits and therefore cannot be fully adjudicated by a non-Article III court. "When a suit is made of 'the stuff of the traditional actions at common law…' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)). The only exception is for cases involving "public rights," meaning that the claim derives from a federal regulatory scheme or is otherwise "integrally related to particular federal government action." *Id.* at 2613.

Plaintiff's claims do not involve public rights or governmental action; they are traditional actions at common law asserted by one private party against other private parties. Such state common law causes of action are quintessential private rights, between private litigants. The fact that Plaintiff is asserting the claims pursuant to a bankruptcy liquidation plan does not alter the analysis. *See Stern*, 131 S. Ct. at 2614 (holding that "fraudulent conveyance suits are 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a *pro rata* share of the bankruptcy *res*'") (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989)). Indeed, courts have long rejected efforts to cloak state law claims in bankruptcy trappings by designating them as turnover actions. *In re Gen. Media, Inc.*, 335 B.R. 66, 76 (Bankr. S.D.N.Y. 2005); *In re CIS Corp.*, 172 B.R. 748, 756 (S.D.N.Y. 1994).

The Constitution thus prohibits the Bankruptcy Court from adjudicating Plaintiff's state law claims for quantum meruit and unjust enrichment.

## II. The Seventh Amendment Entitles Defendants To A Trial By Jury Before This Court

The Seventh Amendment to the Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Supreme Court has interpreted the Seventh Amendment to apply to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A.*, 109 S.Ct. at 2790 (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)). Thus, where the relief sought is money damages – the "relief traditionally provided by law courts or on the law side of courts having both legal and equitable dockets" – "the Seventh Amendment guarantees [litigants] a jury trial right." *Id.* at 2749; *see also Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339 (1990) (holding that the Seventh Amendment was implicated because the claim arising out of a union's alleged duty to represent a member was a claim at law because the claim required proof of a breach of contract and because the plaintiff sought money damages, despite the fact that the cause of action asserted was historically brought in the courts of equity). Indeed, the Supreme Court has held that the dispositive factor is the nature of the relief sought – a prayer for money damages is a claim at law. *Granfinanciera, S.A.*, 109 S.Ct. at 2791.

Here, Plaintiff seeks money damages in the Amended Complaint. In fact, the only reason Plaintiff has styled its remaining causes of action as claims for unjust enrichment and quantum meruit is because New York law bars a breach of contract claim as a matter of law. *See* 22 NYCRR 1215.1 (mandating that a lawyer cannot recover a legal fee where the lawyer fails to enter into a written engagement letter with the client). Plaintiff does not seek restitution or any other equitable remedy. Rather, Plaintiff is clearly seeking to recover fees it alleges Defendants

owed to Dewey pre-petition. Plaintiff's claims for quantum meruit and unjust enrichment are legal in nature, seek only money damages, and therefore are governed by the Seventh Amendment. *See, e.g., Aniero Conrete Co., Inc. v. New York City Construction Authority*, 2000 WL 863208, *10 (S.D.N.Y. 2000) (Haight, J.) ("Although quantum meruit has been referred to as 'equitable' in nature, and is grounded in principles of equity and fairness, it is apparent under New York law the correct characterization of a quasi contract quantum meruit claim is that of an action at law"); *Gecker v. Marathon Financial Ins. Co., Inc. (In re Automotive Professionals, Inc.)*, 389 B.R. 621, 627 (Bankr. N.D. Ill. 2008) ("Because actions for quasi-contract or unjust enrichment were heard in courts of law in 1791 and the Trustee seeks a money judgment, her claim for unjust enrichment is legal in nature"). Accordingly, Defendants are entitled to a trial by jury before the District Court.

### III. The Court Should Now Withdraw The Reference

While in this District courts permit the Bankruptcy Courts to preside over pre-trial matters concerning *Stern* claims, nothing constitutionally-permissible remains to be done by the Bankruptcy Court in this case such that it is now appropriate to withdraw the reference.

Withdrawal of the reference is governed by 28 U.S.C. §157(d), which permits withdrawal from the Bankruptcy Court to the District Court when cause is shown. *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993), held that in considering whether to withdraw the reference, the District Court should consider the following factors:

    (1)    Whether the action is core or non-core;

    (2)    The efficient use of judicial resources;

    (3)    Delay and costs to the parties;

    (4)    Uniformity of bankruptcy administration;

   (5)  Prevention of forum shopping; and

   (6)  Other related factors.

*Id*, 4 F.3d at 1101. The first factor – whether the matter is core or non-core – is no longer operative since *Stern*. As the District Court recently held in an adversary proceeding in the Coudert Brothers, LLP Chapter 11 case, where the bankruptcy estate sued numerous law firms to recover on the (now rejected) state law "unfinished business" theory, after the holding in *Stern*, "identifying a claim as 'core' or 'non-core' under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate a matter." *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464 (S.D.N.Y. 2011) (McMahon, J.). The *Development Specialists* court proceeded to adapt the *Orion* analysis to the holding in *Stern*:

> [O]n a motion to withdraw a bankruptcy reference, the Orion test looks first to the core/non-core distinction in order to determine the advantages and disadvantages of leaving a matter before the Article I court or moving it to an Article III court. See *Orion, 4 F.3d at 1101*. But, as a practical matter, those advantages and disadvantages depend first on the Bankruptcy Court's power to enter final adjudication, and after Stern, that power depends, not on whether the matters are core or non-core, but on whether the rights being adjudicated (1) are public rights, or (2) will necessarily be resolved in ruling on a creditor's proof of claim – or, of course, on the parties unanimously consenting to the bankruptcy court adjudication.
> 
> …
> 
> Thus, where the Bankruptcy Court lacks final adjudicative authority, the remaining Orion considerations will often tend to point toward withdrawal, for the same reasons they did when the question asked was whether or not the actions were core….

*Id.*, at 467.

The threshold issue of the *Orion* test, as adapted to include the analysis required by *Stern*, is whether or not the Bankruptcy Court is constitutionally empowered to adjudicate the state law claims asserted by Plaintiff in the Amended Complaint. As the *Development Specialists* court held, this threshold determination that the Bankruptcy Court cannot determine the claims points consideration of the remaining *Orion* factors in favor of withdrawal, because any supposed advantage of allowing the matter to be heard in the Bankruptcy Court is completely eliminated when the Bankruptcy Court is prohibited by the Constitution from adjudicating the claims.

Moreover, while courts in this District allow Bankruptcy Courts to preside over the pre-trial proceedings relating to *Stern* claims, discovery is now closed and the Bankruptcy Court has declined to review any motion for summary judgment. Even if the Bankruptcy Court had accepted a summary judgment motion, it could at most issue proposed findings of fact and conclusions of law, which this Court would then have to review *de novo*. *See Executive Benefits Ins. Agency*, 134 S.Ct. at 2170.

Discovery is closed, and this matter is trial ready. The Seventh Amendment guaranties Defendants the right to a jury trial, and Defendants have exercised their right to a jury trial before the District Court. Thus, now is an appropriate time to withdraw the reference to the Bankruptcy Court, since there are no pre-trial proceedings remaining before the Bankruptcy Court.

## CONCLUSION

Defendants have a right to a jury trial before the District Court for the adjudication of Plaintiff's purely state law claims for money damages. Discovery has closed, and there exist no further pre-trial proceedings for the Bankruptcy Court to administer. Accordingly, the District Court should withdraw the reference to the Bankruptcy Court.

Dated: New York, New York
August 6, 2015

        MEISTER SEELIG & FEIN LLP

        __/s/ Stephen B. Meister_____
        STEPHEN B. MEISTER
        CHRISTOPHER J. MAJOR
        CHELSEA SILVERSTEIN
        125 Park Avenue, 7th Floor
        New York, NY 10017
        (212) 655-3500

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2015, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Christopher J. Major
Christopher J. Major

[6341-001/4694614/1]                    12